**NGS AMERICAN, INC., and Masco Industries Self–Funded Employee Benefit Plans,**

v.

**Philip W. BARNES, in his capacity as Commissioner of Insurance for the State of Texas.**

**Civ. No. A–92–CA–135.**

United States District Court, W.D. Texas, Austin Division.

Oct. 8, 1992.

Stephen Wasinger, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Louis K. Bonham, Smith, Murdaugh, Little & Bonham, Houston, Tex., John H. Eggertsen, Detroit, Mich., for plaintiffs.

John M. Hohengarten, Attorney General's Office, Austin, Tex., for defendant.

## OPINION AND JUDGMENT

NOWLIN, District Judge.

This case involves the applicability of article 21.07–6 of the Texas Insurance Code to third-party administrators of self-funded ERISA plans. The primary issue is whether ERISA preempts the State of Texas from imposing the regulations, fees, and taxes, pursuant to this article, upon such administrators and plans. Before the Court is the Plaintiffs' Motion for Summary Judgment.

### THE PARTIES

Plaintiff NGS American, Inc., is a Michigan corporation whose business is primarily that of a third-party administrator of self-funded ERISA plans. Plaintiff Masco Employees' Medical Benefit Plan is a self-funded ERISA plan.

The Defendant is Philip W. Barnes in his official capacity as the Commissioner of Insurance for the State of Texas.

In another case before this Court the State of Texas is allegedly seeking to enforce the disputed state statute against a third-party administrator of a self-funded ERISA plan.

### STANDING AND JURISDICTION

Original federal jurisdiction is available if either: (1) some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims; or, (2) one of the claims is effectively one of federal law. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). In a decision rendered on the same day as *Franchise Tax Board v. Construction Laborers Vacation Trust*, the Supreme Court noted that the *Construction Laborers Vacation Trust* decision involved an action seeking a declaration that state laws were *not* preempted by ERISA but the then pending action in which the Court held there was federal jurisdiction involved an action in which companies subject to ERISA regulation sought injunctions against claims that *are* preempted by ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (emphasis in original). In *Shaw v. Delta Air Lines*, the Court expressly stated that:

A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Id.* (citations omitted) Similarly to *Shaw v. Delta Air Lines*, the issue in this action is whether the State's claims "relate to" employee benefit plans within the meaning of 29 U.S.C. § 1144(a), and, if so, whether any exception in ERISA saves them from preemption. *See id.*, 463 U.S. at 96, 103 S.Ct. at 2899.

Initially, the State of Texas has argued that these third-party administrators are not "fiduciaries," and consequently have no standing to sue in federal court under ERISA, within the meaning of that term as set forth in ERISA. Specifically, ERISA defines a fiduciary as:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any

discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). ERISA exempts certain federally registered investment companies, in some circumstances, from this definition of fiduciary. *See* 29 U.S.C. § 1002(21)(A) and (B). By defining "party in interest" as, among others, "any *fiduciary (including, but not limited to, any administrator,* officer, trustee, or custodian), counsel, or employee of such employee benefit plan; ...," ERISA expressly implies that administrators can indeed be considered fiduciaries under ERISA. *See* 29 U.S.C. § 1002(14)(A) (emphasis added). ERISA additionally provides a general jurisdictional standing provision to allow a civil action to be brought in federal court:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ....

29 U.S.C. § 1132(a). Under ERISA, a plan "participant," "beneficiary," or "fiduciary," or the Secretary of Labor, may each initiate a federal civil action. *See Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1287 (5th Cir. 1988). The federal courts have exclusive jurisdiction to hear these actions. *Id.* (citing to 29 U.S.C. § 1132(e)(1)).

According to the Department of Labor, persons are not considered fiduciaries under ERISA who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who do perform solely administrative functions, including recommendations to others for decisions with respect to the plan. *See* 29 C.F.R. § 2506.75–8(D–2) (1991). This classification assumes that these non-fiduciaries perform such administrative duties for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons who are fiduciaries. *Id.* To be a fiduciary, a person or entity must exercise discretionary authority or discretionary control over management of the plan or over disposition of plan assets, or the person must have authority to render investment advice with respect to any assets of the plan. *See id.*

The Texas Attorney General's argument that third-party administrators of ERISA plans are not fiduciaries contradicts the state statute that the Attorney General is seeking to enforce. Specifically, article 21.-07–6 of the Texas Insurance Code expressly states that such administrators are acting in a fiduciary capacity:

Premiums and contributions collected by an administrator on behalf of or for an insurer, plan, or plan sponsor and return premiums received from an insurer, plan, or plan sponsor *are held by the administrator in a fiduciary capacity.*

*See* Tex.Ins.Code Ann. art. 21.07–6 § 17(a) (Vernon Supp.1992) (emphasis added). Therefore, if an administrator is collecting any premiums or contributions from or on behalf of a plan, the administrator is a fiduciary under this state law. Even if the third-party administrator is not a "fiduciary" under ERISA, such an administrator still has standing in the present action pursuant to the general federal question jurisdictional statute, 28 U.S.C. § 1331.

The Texas statute expressly exempts from its coverage any individual or entity that:

provides technical, advisory, utilization review, precertification, or consulting services to an insurer, plan, or plan sponsor and who does not make any management or discretionary decisions on behalf of an insurer, plan, or plan sponsor; ....

*See* Tex.Ins.Code Ann. art. 21.07–6 § 1(1)(M). Apparently, the State has decided not to limit the statute's application according to this provision. This exemption also does not on its face exempt entities that merely process claims.

To determine the dispute over the standing of the plaintiffs, the State argues that this Court should follow the decision of the Second Circuit in *Pressroom Unions–Printers L.I.S. Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). Although arguably persuasive with respect to the particular action before it, the Second Circuit's rationale is not persuasive to the action before this Court. The *Pressroom* decision involved a suit brought by an ERISA fund against a life insurance company and others for the defendants alleged fraud resulting in excessive premium payments from the plan. *See id.* at 891. In *Pressroom* the ERISA plan apparently was not self-funded because it purchased insurance from other entities. *See id.* The ERISA plan sought to invoke ERISA's grant of federal jurisdiction to pursue the plan's civil fraud action against the various defendants. *Id.* The Second Circuit held that federal courts do not have jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(d)(1), because the ERISA does not extend jurisdiction to the plan itself to assert such an action. *See id.* at 892. The court recognized that § 1132(d)(1) makes an ERISA plan a legally cognizable entity, such that the plan can assert a state law contract claim. *Id.* at 893. Apparently, the Second Circuit concluded that ERISA plans could assert such state law causes of action but that these causes should be heard in state courts.

The *Pressroom* ruling did not address the particular situation that is presented to this Court. Significantly, the Second Circuit expressed no views on the possible relevance of the general federal question jurisdictional statute, 28 U.S.C. § 1331. *Id.* at 892 n. 7. The present action involves the assertion of federal law by a self-funded ERISA plan and the plan's administrator. This action does present a federal question

and the parties have standing to pursue this action.

The Fourth Circuit has held that a third-party administrator of a self-funded ERISA plan had standing in federal court to sue a participant for unjust enrichment due to failure to repay advanced payments. *See Provident Life & Accident Insur. Co. v. Waller*, 906 F.2d 985, 986–990 (4th Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Limiting the extent of its holding, the Fourth Circuit held that ERISA federal common law jurisdiction under 28 U.S.C. § 1331 exists only where the disputed issue is of "central concern" to the federal statute. *Id.* at 990. The Fourth Circuit stated that the Supreme Court's prior ERISA decisions permit federal question jurisdiction for ERISA disputes of "central concern" to ERISA involving the creation of federal common law or the interpretation of a specific ERISA provision. *See id.* at 991. The present action involves a dispute that is of "central concern" to ERISA.

Although denying an employer's right to maintain a federal cause of action for restitution of overpayments to a multiemployer ERISA plan pursuant to 29 U.S.C. § 1103 and § 1132(a), the Fifth Circuit nevertheless held that such an employer could maintain such an action pursuant to federal common law under ERISA. *See Jamail, Inc. v. Carpenters District Council*, 954 F.2d 299, 303 and 304 (5th Cir.1992). The Fifth Circuit held that granting such a right to the employer was in "accordance with [ERISA's] policy of total federal control of employee pension plans in all their facets." *Id.* at 304.

Indeed, because self-funded ERISA plans are legally cognizable entities pursuant to ERISA, 29 U.S.C. § 1132(d)(1), and the plan administrators are presumably legally cognizable entities as well, these entities must be allowed to maintain an action such as this one in federal court because the state courts lack subject matter jurisdiction to decide the preemptive scope of ERISA.

The present action does not involve the creation or allegation of any federal com-

mon law remedy under ERISA. More limited and direct, the present action involves the interpretation of specific statutory provisions concerning preemption which are of a "central concern," and indeed a fundamental part of, to ERISA. The self-funded ERISA plan and the plan's administrator both have standing to pursue this action, and the federal courts have jurisdiction to entertain such an action. This action does involve the control of ERISA plans. The Fifth Circuit has recently reiterated that:

> The Supreme Court has consistently emphasized the expansiveness of the "relate to" standard and its purpose of establishing the regulation of pension plans as an exclusively federal concern.

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 (5th Cir.1992) (citations omitted). Although the State may have the best intentions and concerns for the participants and beneficiaries of self-funded ERISA plans, the State may not apply any state regulations that in any way "relate to" such plans.

Stating that an ERISA plan has standing to assert, the Seventh Circuit has held that federal courts have jurisdiction over the plan's declaratory judgment action. *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 579 and 580 (7th Cir.1991). The Seventh Circuit stated that:

> [ERISA, at 29 U.S.C. Section 1132(a)(3),] allow[s] an ERISA plan to bring a declaratory judgment action to determine the extent of its liability, and we promote the goals of ERISA by that interpretation.

*Id.* at 580. The court stated that 28 U.S.C. § 1331 would provide an alternative basis for jurisdiction for such a declaratory judgment action. *See id.*

Accordingly, the plaintiff self-funded ERISA plan and the plaintiff administrator thereof both have standing to bring this action, and the federal courts have exclusive jurisdiction to decide this dispute.

## THE DISPUTED TEXAS LEGISLATION

In a recently enacted statute, the State of Texas has established numerous regulations, some fees, and some taxes that apply to third party administrators of insurance plans. *See generally*, Tex.Insur.Code Ann. art. 21.07–6 (Vernon Supp. 1992). This article defines an "administrator" as:

> a person who collects premiums or contributions from *or* who adjusts *or* settles claims in connection with life, health, and accident benefits or annuities for residents of this state....

*Id.* at § 1(1). The article proceeds to specifically exempt most entities and people that fall within this general definition. *Id.* at § 1(1)(A–R). After eliminating all of the exempt persons and entities, this article appears to apply primarily to third-party administrators of self-insured ERISA plans. The exceptions so greatly outnumber the covered entities and individuals that the article could have been more concisely drafted by only stating the entities and individuals that are covered, instead of those that are not.

In response to an order by this Court, the Defendant was instructed to brief the reasons why article 21.07–5 of the Texas Insurance Code was repealed and replaced with article 21.07–6 and to discuss the substantive changes between the two articles. The State did not discuss the substantive changes. Consequently, this Court will try to point out some noteworthy differences between the two articles. The repealed article had several explicit references to ERISA, but the new article contains no direct references whatsoever to ERISA. Additionally, the repealed article expressly deemed the third-party administrators to be engaging in the business of insurance. *See* Tex.Insur.Code art. 21.07–5 § 26. This provision is absent from the new article. Also, somewhat significant is that the State changed the definition of the fees that would be taxable to omit the word "premiums" from the definition. Although the Defendant argues that the reason that the prior article was repealed and was replaced with the new article was the result of a state constitutional problem, this Court does have reservations concerning some of the substantive changes made by the State presumably to avoid preemption by ERISA because of previous decisions of this Court and other federal courts.

This article defines "administrative or service fees" to include:

all consideration, fees, assessments, payments, reimbursements, dues, and other compensation, excluding sales commissions, received for services as an administrator during a calendar year.

*Id.* at § 1(2).[1] This articles broadly defines what constitutes a "plan" and what constitutes a "plan sponsor:"

(6) "Plan" means a plan, fund, or program established, adopted, or maintained by a plan sponsor or insurer to the extent that the plan, fund, or program, is established, adopted, or is maintained to provide indemnification or expense reimbursement for any type of life, health, or accident benefit.

(8) "Plan sponsor" means a person, other than an insurer, who establishes, adopts, or maintains a plan that covers residents of this state, including a plan established, adopted, or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, an association, a committee, a joint board of trustees, or any similar group of representatives who establish, adopt, or maintain a plan.

*Id.* at § 1(6 and 7). The article specifically requires any person or entity that acts as an administrator to have a certificate of authority issued under the article. *Id.* at § 3(a). The article then sets forth numerous requirements and regulations that any such administrator must comply with, many of which the plans themselves must also comply. *See generally id.* at §§ 2–19. For "knowingly" failing to comply with the article or any regulations promulgated pursuant thereto, an administrator commits a criminal offense punishable by a fine. *Id.* at § 7.

Under this state statute, the State believes that it is fully authorized to tax and regulate third-party administrators of entirely self-funded ERISA plans. An entirely self-funded ERISA plan is a self-insured plan in which the plan itself bears all of the risk. An ERISA plan can be insured in which case the insurer of the plan bears the risk that the losses will exceed the premiums paid. An ERISA plan can also be partially self-funded and partially insured. This question of who is acting as the insurer seems to turn primarily on who bears the risk under the plan. If for example, an ERISA plan only contracted out for someone to "administer" the plan but the ERISA plan retained all of the risk of loss due to claims made under the plan, such a plan would be a self-funded plan. If a plan paid premiums to someone or some entity which would bear the risk of losses resulting from legitimate claims exceeding premiums paid, then the plan would not be self-funded.

Self-funded plans are therefore self-insured plans. These plans bear all of the risk and consequently are the providers of the actual insurance. Third-party administrators of such plans do not bear any of the risk.

This article imposes specific mandatory fees and taxes against administrators. *See id.* at §§ 20 and 21. The State of Texas mandates that the State Board of Insurance establish a "maintenance tax in an amount not to exceed one percent of the correctly reported administrative or services fees of all administrators covered by certificates of authority." *Id.* at § 21(a). This article also purports to regulate the processing and adjudication of claims submitted to covered administrators. *Id.* at § 18.

This article specifically mandates that the third-party administrator and a self-insured ERISA plan enter into a written service agreement that includes the requirements imposed under sections 12 through 19 of the article. *Id.* at § 11. This state statute imposes affirmative obligations directly upon self-funded ERISA plans. The plan is required to retain a copy of the written service agreement. *Id.* at § 11(b). The written service agreement cannot contain a provision that "unreason-

---

**1.** This definition of "administrative or service fee" is substantially identical to ASTA's definition of "gross amount of administrative or service fee." *See Birdsong v. Olson,* 708 F.Supp. 792, 796 (W.D.Tex.1989) (citing Tex.Ins.Code art. 4.11A § 3(2)(A)).

ably restricts" a plan participant's right to obtain other insurance through an insurance agent. *Id.* at § 11(f). The statute further mandates that the plans approve notice given by an administrator to the plan participants. *See id.* at § 13(a). Section 15 of this article requires the plan to approve any advertising of the administrator. Section 16 requires the written agreement between the plan and the plan administrator to address the standards by which the administrator can accept or reject risks.

If they violate any of the provisions of this article, administrators face the possibility of sanctions. *Id.* at § 22. Administrators must also comply with other articles of the Texas Insurance Code. *Id.* at § 23.

More than a mere licensing statute, article 21.07–6 of the Texas Insurance Code effectively imposes significant regulations and restrictions upon third-party administrators of self-funded ERISA plans. Further, the article imposes a tax upon these administrators. This article is more than a nominal burden on these administrators. Pursuant to this article, the State of Texas has attempted to regulate and tax third-party administrators of self-funded ERISA plans. As well as the indirect regulation of self-funded ERISA plans, this article also directly attempts to regulate such plans in their activities with third-party administrators. There is no question that this article "relates to" self-funded ERISA plans.

The dispute concerning this Texas statute is similar to one that this Court has previously had to resolve. In *Birdsong v. Olson,* 708 F.Supp. 792 (W.D.Tex.1989), this Court held that the Texas Administrative Services Tax Act ("ASTA") is null and void to the extent that ASTA "imposed a tax on any ERISA-covered employee welfare benefit plan or any such plan's sponsoring employers, fiduciaries, employee participants, *or administrative service providers...." Birdsong,* 708 F.Supp. at 801 (emphasis added). This Court also stated that:

> The fiduciaries [within ERISA] include the plans' sponsoring employers, mem-

bers of administrative committees of the plans, *plan administrators,* and trustees.

*Id.* at 795. ASTA imposed an annual tax rate equal to 2.5% of the gross amount of administrative or service fees received. *Id.* at 796. If the person liable for this tax did not pay, then ASTA held the plans liable. *Id.* The Texas ASTA Act did "recite" that no person or entity would be liable to the extent that the ASTA tax is preempted by federal law. *Id.*[2] However, as this Court is well aware, despite this statutory language, the State vigorously attempted to impose the ASTA taxes against self-funded ERISA plans.

## THE TAX–INJUNCTION ACT

The Attorney General also argues that the Tax Injunction Act, 28 U.S.C. § 1341, bars federal district courts from enjoining the collection of the tax under this article of the Texas Insurance Code. The Attorney General argues that because these third-party administrators are not among the entities permitted to bring suits in federal district court under ERISA [29 U.S.C. § 1132(a)(3) and (e)] that the Tax Injunction Act applies.

■■■■ Self-funded ERISA plans and their third-party administrators are entities that are entitled to bring such actions in federal district court. The Tax Injunction Act does not bar such actions. *See E-Systems, Inc. v. Pogue,* 929 F.2d 1100, 1102 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). Congress permits any participant, beneficiary, or fiduciary to bring a civil action in federal court "to enjoin any act or practice which violates any provision of ERISA or the terms of the plan." *See id.* (quoting from 29 U.S.C. § 1132(a)(3)). Because state courts lack jurisdiction to decide the dispositive issue, whether ERISA preempts this state statute, there is no effective state remedy and the Tax Injunction Act, therefore, is inapplicable. *See id.*

**2.** The statute at issue in this case does not con- tain such a provision.

PREEMPTION

██ The Plaintiff plan is an ERISA-covered plan. ERISA does allow state law to apply to an employee welfare benefit plan which is a fully-insured multiple employer arrangement and to multiple employer welfare arrangements that fall within § 1003(b)(3). *See* 29 U.S.C. § 1144(a). For other multiemployer arrangements, state laws are preempted to the extent inconsistent with ERISA. *See id.* The ERISA plan at issue in the present action is not a fully-insured multiple employer welfare arrangement (a "MEWA"). The ERISA plan in this action is an entirely self-funded, self-insured, program with an independent third-party administrator. The central dispute is whether the State can regulate and tax these independent third-party administrator of entirely self-funded ERISA plans.

The statutory language of ERISA provides the starting point for the determination of whether these claims are preempted by ERISA. This issue depends upon whether or not the state statute that the State seeks to enforce is fully preempted by ERISA. 29 U.S.C. § 1144(a) is the general preemption provision of ERISA:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . .

29 U.S.C. § 1144(a). This ERISA provision also contains what is referred to as the "savings clause," § 1144(b)(2)(A), which exempts some State regulation from the general preemption:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). Therefore, the State apparently can regulate persons engaging in the business of insurance, banking, or securities, but this regulatory authority is limited by ERISA. In subparagraph (B), § 1144(b)(2)(B), the "deemer clause," ERISA prohibits the state from deeming certain employee benefit plans or trusts as falling within the "savings clause:"

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). A major issue in determining whether preemption is proper in this cause is whether the third-party administrators of purely self-funded ERISA plans fall within the general preemption provision, and if so whether the "savings clause" permits state regulation, and if the "deemer clause" then does not itself prohibit any such state regulation.

In *FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court has explained the preemption clause:

> The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA.

*Id.*, 498 U.S. at ——, 111 S.Ct. at 407. The Supreme Court broadly reads this clause to ensure that the regulation of employee benefit plans remains within the federal forum. *See E–Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991) (citing to *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)). "The preemptive scope of ERISA is 'intended to apply in the broadest sense in all

actions of State or local governments which have the force of law.'" *Id.* (citing to and quoting from *Pilot Life Insurance,* 481 U.S. at 46, 107 S.Ct. at 1552).

In *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the United States Supreme Court explained the state laws and regulations that would be preempted by ERISA:

> "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." .... Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. .... Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.

*See id.,* 498 U.S. at ——, 111 S.Ct. at 483 (citations omitted). Also, state laws which are "specifically designed to affect employee benefit plans are pre-empted" by ERISA. *Id.* (citation omitted).

 The Court has recognized some exceptions to ERISA's broad preemption of state law. *See id.* ERISA does not preempt a general garnishment statute because such a general law might pose merely an administrative burden on an ERISA plan. *Id.* Because it did not require the establishment or maintenance of an ongoing plan, a state law requiring the payment of severance benefits was not preempted by ERISA. *Id.* The federal court should consider whether the statute is generally applicable and "makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *See id.* Although not directly so referencing by name, the state law at issue clearly refers to and functions respective of ERISA plans. Under ERISA, Article 21.07–6 of the Texas Insurance Code "relates to" self-funded ERISA plans.

In *Ingersoll–Rand v. McClendon,* the Supreme Court explained the purpose of ERISA's preemption provision, section 514(a) of ERISA, 29 U.S.C. § 1144(a):

> Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; *the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.* Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. .... Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plan and employer conduct to the peculiarities of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.

*See id.,* 498 U.S. at ——, 111 S.Ct. at 484 (citations omitted) (emphasis added). Article 21.07–6 of the Texas Insurance Code does not minimize the administrative or financial burden upon self-funded ERISA plans. Because of the inefficiencies created by this state article, the beneficiaries of self-funded ERISA plans will be harmed. If the State of Texas is permitted to continue to impose article 21.07–6 of the Texas Insurance Code upon third-party administrators of self-funded ERISA plans, "[s]uch an outcome [would be] fundamentally at odds with the goal of uniformity that Congress sought to implement." *See Ingersoll–Rand,* 498 U.S. at ——, 111 S.Ct. at 484. Even assuming certain provisions of this disputed state statute are consistent with ERISA, the state law is nevertheless preempted.

The Fifth Circuit affirmed this Court's decision concerning the Texas Administrative Services Tax Act ("ASTA") and ERISA. *See E–Systems, Inc. v. Pogue,* 929 F.2d 1100, 1101 (5th Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). The Fifth Circuit concluded that ERISA did preempt the causes of action involving ASTA. *Id.* at 1102–1103. When state laws "relate to" ERISA plans that are self-funded and self-administered, the court Fifth Circuit held that,

under the Supremacy clause, ERISA preempts such state laws. *See id.* at 1102 and 1103.

The Fifth Circuit has adopted the rationale of an en banc decision of the Eleventh Circuit to determine *if* a plan is established under ERISA. *See Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 240–241 and n. 4 (5th Cir. 1990). "[A]n ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of the financing, and procedures for receiving benefits." *See id.* (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)) (footnote omitted). The Plaintiff plan has supplied uncontroverted proof that it is a self-funded ERISA plan.

■ In *Holliday,* the Supreme Court explained that preemption under the "deemer clause" is limited to employee benefit plans that are "self-funded:"

> [T]he deemer clause [exempts] self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance."

*Holliday,* 498 U.S. at ——, 111 S.Ct. at 409. Applying the "deemer clause," the Supreme Court has explained:

> Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

*Id.,* 498 U.S. at ——, 111 S.Ct. at 407 (1990). Therefore, self-funded ERISA plans are exempt from state regulation to the extent that the regulation relates to the plans. *Id.* The Supreme Court recognized the consistency of its ruling with the rationale of its earlier decision:

> "In light of ERISA's "deemer clause" which states that a benefit plan shall not "be deemed an insurance company" for purposes of the insurance saving clause, [the State] has never tried to enforce [the statute] as applied to benefit plans directly, effectively conceding that such an application of [the statute] would be preempted by ERISA's pre-emption clause."

*Id.* (quoting from *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 735 n. 14, 105 S.Ct. 2380, 2387 n. 14, 85 L.Ed.2d 728 (1985)). The Supreme Court clarified the effect of its decision in *Holliday:*

> Our interpretation of the deemer clause make clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured [*i.e.,* self-insured], the State may not regulate it.

*Holliday,* 498 U.S. at ——, 111 S.Ct. at 411. The Court did not want employers to be confronted with "conflicting or inconsistent" State and local regulation of ERISA plans. *Id.*

The Plaintiff plan is self-funded in this action. Clearly, ERISA prohibits the State from regulating this plan directly or indirectly. The following determination that must be made is whether the State's regulation and taxing of the third-party administrator of this plan is permissible under ERISA.

The Supreme Court has explained the distinction between the State's ability to regulate self-funded ERISA plans and those that are not:

> State laws directed toward [ERISA] plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of state laws. On the other hand, employee benefit plans that are insured are subject to indirect state regulation. An insurance company that in-

sures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Holliday*, 498 U.S. at ——, 111 S.Ct. at 409. "[T]he saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans." *Id.*, 498 U.S. at ——, 111 S.Ct. at 411. In the present situation, the ERISA plan has not purchased any insurance. The plan has contracted for a third-party to serve as administrator of the plan.

▆ Clearly any participants seeking to recover benefits due under this self-funded ERISA plan would be limited to suits in federal court. The Supreme Court has agreed that:

> ... Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. at 52, 107 S.Ct. at 1555. Congress intended that all such suits be treated as federal questions. *Id.*, 481 U.S. at 56, 107 S.Ct. at 1557. Therefore, the federal courts are the primary judicial authority to determine whether a participant is covered, and if so to what extent, by an ERISA plan. Any coverage disputes involving ERISA plans are removable to federal court.

▆ The State argues that it can regulate these third-party administrators because they are engaging in the "business of insurance." Again, the resolution of this controversy depends primarily upon what entity is bearing the risk of loss. To determine whether a practice is encompassed by the "business of insurance," the Supreme Court applies the same criteria in ERISA cases as it does to McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, cases. *See Pilot Life Insurance*, 481 U.S. at 48, 107 S.Ct. at 1553. Specifically, the courts should apply these three factors to determine if an activity constitutes the "business of insurance:"

(1) whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) whether the practice is an integral part of the policy relationship between the insurer and the insured;

(3) whether the practice is limited to entities within the insurance industry.

*Id.*, 481 U.S. at 48–49, 107 S.Ct. at 1553.

This Court need not decide whether this state law regulates insurance or not. If the State law does not regulate insurance, then this law is not "saved" by ERISA's "savings clause." If the state law does regulate insurance, then this law is prohibited by the "deemer clause."

By arguing that this law does indeed regulate the business of insurance, the State places this state law in direct opposition to the "deemer clause." The insurer in the present situation is the self-funded ERISA plan. The third-party administrator is apparently no more than an administrator. Although the State vigorously asserts that such third-party administrators are engaged in the business of insurance, the State's position hardly merits a response. Indeed, if an ERISA plan is not self-funded then the plan would not be the insurer. When the self-funded ERISA plan is the insurer, or risk-bearer, then the state statute is preempted by virtue of the "deemer clause." Any state law attempting to regulate a third-party administrator of a self-insured ERISA plan would not be "saved" because such a law would not regulate the business of insurance but would "relate to" a self-funded ERISA plan.

Further, insured ERISA plans often "administer" the plans themselves even though these insured plans purchase insurance from third parties. If a State were

permitted to declare that an administrator was engaging in the business of insurance for self-funded ERISA plans, then the insured ERISA plans that are self-administering would have to be likewise adjudged to be at least partially self-insured because they would be engaging in the business of insurance. If the State could argue that third-party administrators of self-funded ERISA plans are engaging in the business of insurance, then insured ERISA plans that are partially self-administering could argue that they are at least partially self-insured and any regulation of their insurance providers is preempted by ERISA. The State cannot have it both ways.

The Congress and the Supreme Court have permitted the States to regulate third-party insurers of ERISA plans that are not self-funded. However, the States cannot directly or indirectly regulate self-funded ERISA plans. The Supreme Court's bright line prohibition of direct or indirect regulation of self-funded ERISA plans applies to preempt this attempted state regulation and taxing that has both a direct and indirect effect upon self-funded ERISA plans. Congress has made an explicit distinction that the Supreme Court has construed. This Court is bound by the prior decisions of the Supreme Court construing ERISA.

To support the finding that the disputed state statute is not "saved" from preemption, this Court finds that the reasoning of its decision in *Birdsong* addressing the same basic issue is particularly appropriate. *See Birdsong,* 708 F.Supp. at 800 and 801. "[I]nsurance carriers are not engaged in the business of insurance when providing administrative services to ERISA plans when the administrator assumes no financial risk relating to benefit claims." *Id.* at 800 (citations omitted). The same conclusion applies to all third-party administrators of self-funded ERISA plans.

Relying on a federal district court decision from another jurisdiction, the State argues that regulating and licensing third-party administrators "relates to" an ERISA plan in too tenuous or remote of a manner so as not to be preempted. *See Benefax Corp. v. Wright,* 757 F.Supp. 800

(W.D.Ky.1990). The Kentucky statute apparently only requires administrators to apply for a license to be issued by that state's Commissioner of Insurance. *See id.* at 801–803. The Kentucky statute is no more than just a licensing statute. *Id.* The disputed Texas statute is much broader and more intrusive. In addition to licensing requirements, the Texas statute also includes extensive regulation direct and indirect of both third-party administrators and ERISA plans. The Texas statute also imposes a tax upon third-party administrators, as well as burdensome bonding requirements. Without even directly addressing the reasoning of the *Benefax* court, this Court finds that decision inapplicable to the present situation.

## THE PROPER INJUNCTIVE RELIEF

In a recent decision the Supreme Court has explained the propriety and scope of injunctive relief in the federal courts. *See Morales v. Trans World Airlines,* —— U.S. ——, ———– ———–, 112 S.Ct. 2031, 2035–2036, 119 L.Ed.2d 157 (1992). The Court stated that federal courts may enjoin state officers "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Id.* (quoting from *Ex parte Young,* 209 U.S. 123, 156, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908)). The Court continued:

> When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no adequate remedy at law.

*Id.* (citation omitted). Like the airlines in the Supreme Court case, the parties in the present action are faced with a difficult choice:

> continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.

*Id.* Any injunctive relief issued in such a case should be limited to the particular dispute before the court. *Id.*

Besides facing civil and criminal penalties, the plaintiffs in the present action cannot even pursue this action in Texas state courts because the Texas state courts do not consider themselves to have subject matter jurisdiction when an action is preempted by ERISA since the federal courts have exclusive jurisdiction. *See E–Systems v. Pogue,* 929 F.2d at 1104 (Brown, concurring) (citing *Gorman v. Life Insurance of North America,* 811 S.W.2d 542, 545–547 (Tex.1991)[3]). Therefore, requiring a state court injunction suit would be useless. *E–Systems v. Pogue,* 929 F.2d at 1105.

▇ The State of Texas should take heed of the Supreme Court's rationale in the *Morales v. Trans World Airlines* decision. The Court's distinguishing between the use of the words "relate to" instead of the word "regulate" in the Federal Aviation Act is equally applicable to the present ERISA dispute. The State has argued that the disputed state statute does not regulate self-funded ERISA plans.[4] The State has again failed to understand the straightforward application of the ERISA statute. The statute does not permit any state regulation or control, whether direct or indirect, of self-funded ERISA plans. Such regulation is a matter of exclusive federal concern.

## GENERAL POLICY CONSIDERATIONS

Self-funded ERISA plans presumably can and do protect themselves from incompetent third-party administrators. The ERISA plans can either become self-administering or find a different third-party administrator. Although individual consumers can be much more easily taken advantage of, this Court does have confidence that employers and employee organizations will be more prudent in selecting a third-party administrator for self-funded ERISA plans. Further, this Court assumes that the ultimate financial decisions for such self-funded ERISA plans will be made by the plan and its sponsors and participants and not the third-party administrators.

Finally, the federal government has the full authority and the power to impose whatever restrictions and regulations that it deems necessary to regulate and supervise third-party administrators of entirely self-funded ERISA plans, as well as the self-funded ERISA plans themselves. Any state regulation is preempted by ERISA.

## CONCLUSION

In conclusion, the plaintiffs have met their burden to show that they are indeed plans and entities that are subject to preemption under ERISA. The State, on the other hand, has failed to show that the this state regulation and taxation of third-party administrators of self-funded ERISA plans is not preempted under ERISA. The State Attorney General can and should contact and work with the United States Department of Justice and Department of federal action should be instituted. The United States Government has the authority and the responsibility to supervise the management and function of ERISA plans.

Article 21.07–6 of the Texas Insurance Code relates to self-funded ERISA plans. Because this statute is not saved from preemption, Article 21.07–6 of the Texas Insurance Code as applied to third-party administrators of self-funded ERISA plans is void as unconstitutional under the Supremacy Clause of the United States Constitution. Self-funded ERISA plans may not be regulated by the States either directly or indirectly.

---

**3.** The Texas Supreme Court did recognize that the state courts have concurrent jurisdiction with the federal courts for three types of civil ERISA actions: (1) to recover benefits due under the terms of the plan; (2) to enforce rights under the plan; and, (3) to clarify rights to future benefits. *See Gorman,* 811 S.W.2d at 545 (citing 29 U.S.C. § 1132(c)). These actions may only be brought by a participant or a beneficiary under the ERISA plan. *See* 29 U.S.C. § 1132(a)(1). ERISA plans and administrators thereof do not qualify to bring such suits in state courts.

**4.** *See* Defendants' *Brief in Support of Motion to Dismiss,* at 3, filed January 21, 1992.

ACCORDINGLY, IT IS ORDERED, AD-JUDGED, AND DECREED that the Plaintiffs' Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED that the Defendant and the Defendant's agents are hereby ENJOINED from enforcing or threatening to enforce directly or indirectly the provisions of Article 21.07–6 of the Texas Insurance Code against the Plaintiffs, the self-funded ERISA plan or its third-party administrator.