CIGNA HEALTHPLAN OF LOUISIANA, INC. Connecticut General Life Insurance Company

v.

STATE of Louisiana, ex rel. Richard P. IEYOUB, Attorney General.

Civ. A. No. 94–885.

United States District Court, M.D. Louisiana.

April 17, 1995.

Harry S. Hardin, III, Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Robert N. Eccles, Donald T. Bliss, Karen M. Wahle, O'Melveny & Myers, Washington, DC, for CIGNA Healthplan of Louisiana, Inc., Connecticut General Life Ins. Co.

David C. Kimmel, Dept. of Justice, Baton Rouge, LA, for Richard P. Ieyoub.

Robert J. Conrad, Adams & Reese, New Orleans, LA, for amicus curiae, Louisiana State Medical Soc., Louisiana Dental Ass'n.

### *ORDER AND REASONS*

FELDMAN, District Judge.

Two contradictory motions are before the Court: defendant's motion to dismiss and plaintiffs' motion for partial summary judgment. They explore some new issues of law. For the reasons that follow, defendant's motion is GRANTED in part and DENIED in part and plaintiffs' motion is GRANTED.

### *Background*

Plaintiffs, CIGNA Healthplan of Louisiana, Inc. ("CIGNA") and Connecticut General Life Insurance Company ("CGLIC"), have sued Richard P. Ieyoub, in his official capacity as the Attorney General of the State of Louisiana, for a declaratory judgment concerning § 40:2202(5)(c) of the Louisiana Revised Statutes, the "Any Willing Provider Statute." In Count I, plaintiffs seek a declaratory judgment that, at least as applied to health care service plans that serve participants and beneficiaries of employee welfare benefit plans regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), the Any Willing Provider Statute is preempted by ERISA and thus violates the Supremacy Clause of the United States Constitution, art. VI, cl. 2. As an alternative claim, in Count II plaintiffs seek a declaratory judgment that the statute violates the Due Process Clause of the Fourteenth Amendment of the Constitution because it interferes with the plaintiffs' freedom to contract with health care providers of their choice. Plaintiffs also seek an order enjoining the State from suing the plaintiffs for violations of the statute and from providing the statutory notification that would enable private parties to obtain treble damages in a civil suit brought under Louisiana Revised Statutes § 51:1409(A), the Unfair Trade Practices and Consumer Protection Law.

CIGNA and CGLIC offer a variety of health care coverages and administrative services to health care consumers through their managed care programs. Under the Any Willing Provider Statute, they are "group purchasers" who serve as brokers and third party administrators of such programs. CIGNA is a licensed HMO and provides prepaid health care coverage to its enrolled subscribers through a network of selectively contracted health care providers, such as physicians and hospitals. CIGNA markets its predetermined cost provider panel to health care consumers, either directly or through employers, insurance companies, or other groups, who are given economic incentives to patronize its network of preferred providers.

By contract, CGLIC markets the CIGNA network to consumers in Louisiana. CGLIC, a duly licensed health insurer, offers and administers both insured and self-funded health benefit plans to its clients, including sponsors of ERISA-regulated employee welfare benefit plans. CGLIC encourages the participants and beneficiaries of its health benefit plans to utilize the services of the CIGNA network through such incentives as co-insurance differentials. These insured and self-funded plans are "preferred provider organizations" ("PPO"s) within the meaning of Louisiana Revised Statute § 40:2202(5)(a). Among the subscribers to CIGNA's and

CGLIC's programs are employee benefit plans with HMO or PPO options.

CIGNA and CGLIC compete with many other managed care firms to contract with hospitals and doctors throughout Louisiana for the delivery of health care services to its participants and beneficiaries. Those who participate in the preferred provider network are able to reduce their fees for services because the limited size of the network insures each provider a sufficient volume of patients to warrant the fee reductions. The preferred provider network also reduces costs and is said to improve services by fostering competition between providers. According to plaintiffs, this selective contracting is what enables them, as well as the employee benefit plans they serve, to control or reduce costs and assure quality.

The plaintiffs claim that their ability to continue to offer services through high quality and low cost HMOs and PPOs in Louisiana is threatened by the Any Willing Provider Statute. In 1984 the statute became effective; it authorizes the formation of preferred provider organizations to assist in reducing health care costs in Louisiana. § 40:2201(C). The statute states: "No licensed provider, other than a hospital, who agrees to the terms and conditions of the preferred provider contract shall be denied the right to become a preferred provider to offer health care services within the limits of his license." § 40:2202(5)(c). The plaintiffs maintain that the statute requires them, and as such, employee benefit plans that use their network, to add any health care provider who is willing and able to meet the terms and conditions of their provider contracts.

In February 1993 the Louisiana Attorney General issued Advisory Opinion Number 92–824, which stated his opinion that the violation of the Any Willing Provider Statute would be considered an unlawful trade practice giving rise to a private cause of action under the Unfair Trade Practices and Consumer Protection Law, La.Rev.Stat.Ann. § 51:1405(A) (West 1987). Subsequently, in January 1994, Dr. Ronald D. Sylvest, a health care provider on CIGNA's preferred provider panel, was notified that his services were no longer needed and that (pursuant to a termination clause) his contract with CIGNA would be terminated, effective early March 1994. Dr. Sylvest sued CIGNA, alleging that CIGNA violated the Any Willing Provider Statute by terminating his participation on the panel. A temporary restraining order was issued against CIGNA, but the suit was subsequently dismissed after a settlement was reached. CIGNA notes that at the point of settlement, it had already incurred substantial legal expenses in its defense.

In May and July 1994, Drs. Neil Smith and John Saer submitted applications for admission to CIGNA's preferred provider panel. Because CIGNA had already contracted to place a number of other doctors of Dr. Smith's and Dr. Saer's specialties on its panel, CIGNA rejected their applications. CIGNA is currently processing more applications from other doctors in Louisiana for admission to its panel. CIGNA wishes to exclude some of these applicants because enough doctors in the relevant specialties have already been signed up.

Also, in May 1994 the Attorney General mailed a "Notice of R.S. 51:1401 Complaint" to plaintiffs. The statutory notice informed them that a formal complaint had been filed with the Attorney General's office by another doctor, Dr. Stephen Anthony Scalco, charging that the plaintiffs had violated the Unfair Trade Practices and Consumer Protection Law by rejecting his panel application in violation of the Any Willing Provider Statute. The notice further warned that if the rejection was found to violate the statute and constitute an unfair trade practice under the Unfair Trade Practices and Consumer Protection Law, Dr. Scalco would be entitled to treble damages.

To engage their request for declaratory relief, plaintiffs allege that this series of events makes them vulnerable to additional or immediate suit for violation of the Any Willing Provider Statute. They note that such suits will force them to incur still more costly legal expenses as well as cause harm to their reputation among consumers. Because the Unfair Trade Practices and Consumer Protection Law may also be enforced by the Attorney General under La.Rev.Stat.

Ann. § 51:1407 (West 1987), plaintiffs claim to bear a substantial risk of suit by the Attorney General to enforce the provisions of the Any Willing Provider Statute.

The State has moved for dismissal of both counts of plaintiffs' complaint, asserting a number of defenses in bar. Plaintiffs have responded with a motion for partial summary judgment as to Count I of their complaint, seeking injunctive relief and a declaratory judgment that the Any Willing Provider Statute is preempted by ERISA on the ground that the statute represents the improper extension of state law into an area exclusively regulated by ERISA.[1] The Louisiana State Medical Society and the Louisiana Dental Association have filed amici curiae papers in support of the State's position.

### I. Motion to Dismiss

The Court will consider each of the State's grounds for dismissal in turn.[2]

### A. Subject Matter Jurisdiction

#### 1. Federal Question Jurisdiction

##### a. ERISA Preemption Claim

The State contends that this Court has no subject matter jurisdiction over plaintiffs' ERISA preemption claim because plaintiffs are not enumerated parties entitled to bring a civil enforcement action under ERISA. See 29 U.S.C. § 1132(a). The plaintiffs respond that the Court has federal question jurisdiction under 28 U.S.C. § 1331

because they claim that the Any Willing Provider Statute violates the Supremacy Clause of the United States Constitution by virtue of ERISA's broad preemption sweep. See 29 U.S.C. § 1144. The Court must determine whether § 1331 provides plaintiffs their ticket to a seat in federal court. The Court concludes that it does.

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), plaintiffs, employers and a plan sponsor, claimed that a state law was preempted by ERISA. The Supreme Court held that the federal court indeed had subject matter jurisdiction over plaintiffs' suit and noted that

> [i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Id.* at 96 n. 14, 103 S.Ct. at 2899 n. 14 (citations omitted). Although the State invokes the Supreme Court's decision in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) in support of its argument that the plaintiffs' assertion of ERISA preemption does not give rise to federal jurisdiction[3], the Supreme Court explicitly held

---

1. Plaintiffs urge that the Any Willing Provider Statute "affects employee benefit plans utilizing HMO and PPO coverages by altering their administration, eroding the quality of health care services which they provide[,] and increasing the costs of such plans for employers and their employees in Louisiana."

2. Because the State's defenses under the Eleventh Amendment and the Anti–Injunction Act are patently without merit, the Court only summarily addresses them here. First, the State claims that it is immune from suit under the Eleventh Amendment. Clearly, the State is not entitled to such a defense under these circumstances. See *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). See also *Jones v. Louisiana ex rel. Bd. of Trustees*, 764 F.2d 1183, 1185–86 (5th Cir.1985) (although state official not named in caption, named in

body of complaint and thus Eleventh Amendment defense meritless). Secondly, the State maintains that the Anti–Injunction Act effectively bars plaintiffs' suit. However, plaintiffs plainly do not seek to stay any current or pending state court proceedings. See *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *B & A Pipeline Co. v. Dorney*, 904 F.2d 996 (5th Cir. 1990). Thus, both defenses are without merit.

3. The State also attempts to use two Louisiana federal district court decisions. Both are equally inapplicable because they involved attempts by defendants to remove to federal court on the *defense* of ERISA preemption and neither involved a suit for declaratory or injunctive relief against the State. In *Gavin North Sherwood Chiropractic Clinic, A.P.C. v. Brower*, 838 F.Supp. 274 (M.D.La.1993), an association of chiropractic clinics brought suit in Louisiana state court against a preferred provider organization to be

in *Shaw* that *Franchise Tax Board* did not call into question the federal court's jurisdiction to decide cases seeking injunctive and declaratory relief on ERISA preemption grounds. *Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14.

Moreover, a recent Fifth Circuit decision expressly supports the plaintiffs' position that this Court can properly exercise its subject matter jurisdiction. In *Self-Insurance Institute of America, Inc. v. Korioth*, 993 F.2d 479 (5th Cir.1993), the court held that subject matter jurisdiction exists under § 1331 when a party seeks both declaratory and injunctive relief based upon the contention that a state law violates the Supremacy Clause by virtue of ERISA preemption, even when the plaintiffs are non-enumerated ERISA parties who could not sue under ERISA's civil enforcement provision. *Id.* The court commented that "a federal declaratory judgment action affirmatively brought to determine whether a state law is preempted presents a valid basis for federal question jurisdiction." *Id.* at 483; *see also Hydrostorage, Inc. v. Northern Cal. Boilermakers Local Joint Apprenticeship Comm.*, 891 F.2d 719, 725 (9th Cir.1989), *cert. denied*, 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990) (court had subject matter jurisdiction under § 1331 over suit for declaratory and injunctive relief brought by a non-enumerated party to prevent enforcement of a state regulation claimed to be preempted by ERISA). As in *Korioth*, the fact that there is no underlying state court suit involved here makes "the preemption issue ... particularly amenable to a federal forum." *Id.* at 482. And as did the defendants in *Korioth*, both the State and *amici curiae* here confuse the issue of standing with that of jurisdiction. *See id.* at 483–84.

The State also maintains that plaintiffs' ERISA preemption claim is insubstantial as obviously without merit; it claims that prior decisions foreclose controversy on the subject. *See New Orleans Public Serv., Inc. v. City of New Orleans*, 782 F.2d 1236, 1241, *withdrawn in part on other grounds*, 798 F.2d 858 (5th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987). In determining the substantiality of plaintiffs' ERISA claim, the Court must keep in mind the rigorous test for dismissal. And the Court may not dismiss "if there is 'any foundation of plausibility' to the claim." *Id.* (quoting *Meason v. Bank of Miami*, 652 F.2d 542, 547 (5th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1428, 71 L.Ed.2d 649 (1982)). The Court need not conclude that the plaintiffs will ultimately prevail on their claim. *NOPSI*, 782 F.2d at 1242. As this preempting question is a matter of first impression, the Court cannot conclude that plaintiffs' claims are clearly without merit or foreclosed by precedent.

### b. *Due Process Claim*

In Count II of their complaint, plaintiffs assert a Fourteenth Amendment due process claim. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs have pleaded they should have the "liberty ... to contract with providers of their choice to establish and maintain an economically viable preferred provider arrangement pursuant to [the Any Willing Provider Statute]." (Pls.' Compl. ¶ 34). They maintain that, on the contrary, such liberty is impeded by the Any Willing Provider Statute. Because the plaintiffs expressly set forth a claim under the Constitution, their claim necessarily arises under federal law for

admitted as preferred providers. *Id.* at 275.95–110612 The plaintiffs alleged a violation of the Any Willing Provider Statute. When the defendants attempted to remove to federal court claiming ERISA preemption, the Court ordered the case remanded to state court for lack of subject matter jurisdiction. *Id.* at 276. In *Willis-Knighton Medical Center v. Community Health Network of Louisiana, Inc.*, Civ. A. No. 93–1503, slip op. at 3 (W.D.La. Dec. 16, 1993), plaintiffs, a hospital and numerous physicians,

sued an HMO in Louisiana state court for breach of contract. The plaintiffs expressly did not allege a violation of the Any Willing Provider Statute and in fact no mention of the statute is made in the opinion. *Id.* at 9–10. When the defendant attempted to remove to federal court claiming that plaintiffs' breach of contract claim was preempted by ERISA, the Sherman Act and the Clayton Act, the Court ordered the case remanded to state court for lack of subject matter jurisdiction.

purposes of § 1331. *See, e.g., Powell v. McCormack,* 395 U.S. 486, 513–17, 89 S.Ct. 1944, 1960–61, 23 L.Ed.2d 491 (1969).

### i. *Failure to State a Claim*

■ The State's argument concerning plaintiffs' due process claim turns more on the viability of their claim than the Court's power to adjudicate it. Because the State essentially attacks plaintiffs' claim on the merits, the Court will consider whether under Federal Rule of Civil Procedure 12(b)(6), plaintiffs' due process claim states a claim upon which relief may be granted. The Court finds that it does not and thus dismisses Count II of plaintiffs' complaint.

In support of due process relief, plaintiffs argue that the Any Willing Provider Statute is not rationally related to a legitimate state purpose. *See, e.g., Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). Rather, they say, the statute forces PPOs to contract with each qualified provider who is willing to participate, thus spreading a limited pool of patients over an unlimited provider pool. They also argue that the net result of compliance with the statute is increased costs for both PPOs and HMOs as well as patients, a result that is in direct contravention with the statute's articulated purpose of providing an "incentive for purchasers and providers to strive for more cost-efficient and effective methods of providing quality patient care and more efficient payment for services rendered." La.Rev.Stat.Ann. § 40:2201(B) (West 1987). However, even assuming that plaintiffs have a liberty or property interest that deserves protection, an issue the Court does not reach, the Court concludes that the statute is rationally related to the legitimate and asserted State purpose of assuring patient access to quality health care without restricting the freedom to choose one's provider.

### 2. *Case or Controversy* [4]

■ Under both the Declaratory Judgment Act, 28 U.S.C. § 2201 and Article III of the Constitution, the Court may adjudicate a claim for declaratory relief only when an actual controversy exists. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272, 61 S.Ct. 510, 511, 85 L.Ed. 826 (1941). The State denies the existence of a live controversy as to both counts of plaintiffs' complaint and asserts that plaintiffs' claims are based upon mere conjecture as to whether the State will ever file suit against the plaintiffs for a violation of the Any Willing Provider Statute. It also urges that any declaratory judgment would be advisory in nature.

■ Plaintiffs counter that not only have they been sued by at least one person for violating the statute, but also that the threat of future suits by the State and other persons is beyond mere speculation. Plaintiffs remind us that although the Attorney General has not yet sued them to enforce the statute, he has issued a formal opinion in which he concluded that the statute provides for a private right of action under the Unfair Trade Practices and Consumer Protection Law, *see First Gibraltar Bank, FSB v. Morales,* 19 F.3d 1032, 1038 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), *vacated and superseded on other grounds,* 42 F.3d 895 (5th Cir.1995), which also accords to the State an enforcement mechanism of its own. La.Rev.Stat. Ann. § 51:1407 (West 1987). The Attorney General has also given plaintiffs the statutory notice of a complaint which asserts a claim based upon plaintiffs' violation of the Any Willing Provider Statute because of their denial of a doctor's right to become a network provider. *See* La.Rev.Stat.Ann. § 51:1409(A) (West 1987).

The Court finds that an actual justiciable controversy of sufficient immediacy and reality persists which vests the Court with the

---

4. Although the State catalogs this issue separately, because the analysis is the same under either theory, the Court will consider concurrently whether an actual case or controversy exists under both the Declaratory Judgment Act and the United States Constitution. *See Texas v. West*

*Publishing Co.,* 882 F.2d 171, 175 (5th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) ("case or controversy requirement of Article II of the ... Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act".)

discretion to entertain a request for declaratory relief. *See Texas v. West Publishing Co.*, 882 F.2d 171, 175 (5th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). The preemption question presented implicates an issue of law and thus is aptly fit for judicial determination. *First Gibraltar*, 19 F.3d at 1038. Moreover, the plaintiffs ought not be " 'placed in the dilemma of incurring the disadvantages of complying [with the statute] or risking penalties for noncompliance.' " *Id.* at 1039 (quoting *Whitney v. Heckler*, 780 F.2d 963, 969 n. 6 (11th Cir.), *cert. denied*, 479 U.S. 813, 107 S.Ct. 65, 93 L.Ed.2d 23 (1986)); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 296–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).[5]

### 3. Standing to Bring ERISA Preemption Claim

■ The substance of the State's standing argument is that plaintiffs' injuries arise from the state statute's requirements, and not from any right inherent in ERISA itself[6], thus depriving plaintiffs of standing. This argument, however, fails to take into account the fact that plaintiffs bring their suit under the Supremacy Clause and the Due Process Clause of the Fourteenth Amendment.

Two recent decisions of the Fifth Circuit undermine the State's argument. First, as discussed earlier, in *Self–Insurance Institute of America, Inc. v. Korioth*, 993 F.2d 479 (5th Cir.1993), the court held that an organization composed of employer sponsors, plan sponsors, and *third party administrators*[7], although not enumerated in ERISA's civil enforcement provision, had standing to bring suit seeking a declaratory judgment and re-

lated injunctive relief that a Texas statute was preempted by ERISA. *Id.* at 484–85. Relying on *Association of Data Processing Services Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Fifth Circuit concluded (1) that plaintiffs would suffer injury in fact—economic injury—through the statute's enforcement and that such injury would likely be remedied by the court's finding that the statute was preempted by ERISA, and (2) that third-party administrators providing services to ERISA plans fall within ERISA's zone of interest, even if unenumerated therein.[8] *Korioth*, 993 F.2d at 484; *see also* 29 U.S.C. § 1002(14)(A)–(B) (ERISA defines a "party in interest" as a person providing services to employee benefit plans. Here, plaintiffs indisputably provide services to such plans through their HMOs and PPOs). In *NGS American, Inc. v. Barnes*, 998 F.2d 296 (5th Cir.1993) ("*NGSII* "), *aff'g* 805 F.Supp. 462 (W.D.Tex.1992) ("*NGSI* "), the court again agreed that a third party administrator of an ERISA plan had standing to seek a declaration against the state that a state statute was preempted by ERISA. *NGSII*, 998 F.2d at 298 n. 2; *see also NGSI*, 805 F.Supp. at 465 (holding that "[e]ven if [a] third-party administrator is not a 'fiduciary' under ERISA, such an administrator still has standing ... pursuant to ... § 1331").

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court spoke of three prerequisites of standing:

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and

---

**5.** The Court notes that the plaintiffs' risk of suit and the potential incurrence of significant economic losses to both plaintiffs and their subscribers as a result of their compliance with the statute creates a real controversy. If forced to comply with the statute, plaintiffs would suffer significant economic cost as a result of the restructuring of their plan to accommodate all willing providers.

**6.** Neither party debates that plaintiffs have no mechanism with which to bring a suit under the civil enforcement action provisions of ERISA. *See* 29 U.S.C. § 1132(a). The case literature, as reflected in *Korioth*, separates the subject matter

jurisdiction analysis and the standing analysis. Both, however, implicate related doctrine.

**7.** The State acknowledges that these plaintiffs are third party administrators and service providers to health benefit plans falling within the scope of ERISA. (*See, e.g.*, Defs.' Mot. to Dismiss at 2–3; Rebuttal Mem. at 6, 8).

**8.** The court noted that its finding that third-party administrators fall within the zone of interest was buttressed by the fact that state law defined such administrators as fiduciaries. However, the court did not find this fact decisive to its determination. *See Korioth*, 993 F.2d at 484.

particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'

Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'

Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* at 560–61, 112 S.Ct. at 2136 (citations omitted). The burden is on the plaintiffs to establish the existence of these three elements. *Id.*

Plaintiffs meet their burden. Plaintiffs have established sufficient injury.[9] Moreover, there is a connection between the injury and the statute challenged, the Any Willing Provider Statute.[10] Finally, it is likely that, at least to the extent that their programs are aimed at employee benefit plans, the plaintiffs' injury could be redressed by a determination that the Any Willing Provider Statute is preempted by ERISA.

## II. *ERISA Preemption*

### A. *Standard for Summary Judgment* [11]

■ Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. *Application*

The Court now turns to the heart of the parties' dispute: whether the statute, as it applies to the employee benefit plans that use the plaintiffs' network of providers, is preempted by ERISA?

### 1. *Relationship of the statute to ERISA*

■ ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The Supreme Court has held that the preemption clause "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' employee benefit plan governed by ERISA." *FMC Corp. v. Holliday,* 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The preemption text is notably loose. A state law relates to an employee benefit plan and is thus preempted "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A state law may relate to an employee benefit plan and be preempted "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). However, although the preemptive scope of ERISA is deliberately expansive, it has its limits. The

---

9. As in *Korioth,* the plaintiffs here, as discussed above, suffer the injury of economic loss. Contrary to the State's assertion, economic harm has long been considered sufficient palpable injury to give rise to standing. *E.g., O'Hair v. White,* 675 F.2d 680, 687 (5th Cir.1982). This Court also emphasizes that

> "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred ... in order to establish standing depends ... upon whether the plaintiff is himself an object of the action ... at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."

*Lujan,* 504 U.S. at 561–62, 112 S.Ct. at 2137.

10. The State mischaracterizes the inquiry by implying that the statute challenged by the plaintiffs is not the Any Willing Provider Statute, but ERISA.

11. The Court recognizes that the State challenged the preemption issue in their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). However, because the plaintiffs have filed a motion for partial summary judgment on this issue and neither party places any facts in dispute, thus not impacting the allegations of plaintiffs' complaint, the motions present a pure question of law, the resolution of which would be the same under either procedural vehicle.

Supreme Court has cautioned that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. In applying these principles, the Court bears in mind that the determination of whether ERISA preempts a state law claim turns very much on congressional intent. *See Ingersoll–Rand,* 498 U.S. at 137–38, 111 S.Ct. at 482.

■ Plaintiffs maintain that the Any Willing Provider Statute encounters and confronts ERISA plans for two reasons. They point out that the express terms of the statute seem to cover employee benefit plans. *See FMC Corp.,* 498 U.S. at 59, 111 S.Ct. at 408 (statute's reference to "[a]ny program, group contract or other arrangement for payment of benefits" was sufficient to establish its relationship to ERISA plans). They also submit that the statute affects the structure and administration of ERISA plans, and therefore necessarily relates to such plans for preemption purposes.[12]

The Court agrees that the statute relates to employee benefit plans. The statute falls within the scope of Louisiana's Health Care Cost Control Act, La.Rev.Stat.Ann. §§ 40:2201–2205 (West 1987 & Supp.1994), which directs its purpose at reducing health care costs. The language of the Act betrays the State's perception that the statute is no more than a law of general applicability, with no specific reference to ERISA-governed plans. On the contrary, several provisions point to the Act's express reference and applicability to employee benefit plans. The Act defines group purchasers as "[e]ntities which contract for the benefit of their insured, employees, or members such as insurers, self-funded organizations, ... or employers who establish or participate in self funded trusts or programs [as well as e]ntities which serve as brokers for the formation of such contracts." La.Rev.Stat.Ann. § 40:2202(3)(a)–(b). The State does not dispute that this definition fits the plaintiffs. In

defining the organization of PPOs, the Act expressly recognizes the interests of insureds and employees with its observation that "[t]he contractual ... agreements [between the providers and group purchasers, such as plaintiffs here,] may also include incentives which encourage the insured employee or member to utilize the participating providers." La.Rev.Stat.Ann. § 40:2202(5)(b). Finally, the Act explicitly addresses the benefits due participants in plans that incorporate PPO options. *See* La.Rev.Stat.Ann. § 40:2203(C). The statute may well have the effect of expanding the realm of choice of providers while increasing their potential costs, as well as the costs to their employer or plan sponsor. However, potentially increased cost is not the only result of the statute. The Court agrees with the plaintiffs that application of the statute impacts the employers' or plan sponsors' discretion as to how health benefits may be structured under their employee benefit plans. It explicitly directs that they may not structure their programs so as to exclude any provider willing and able to participate. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 737–41, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985) (state statute requiring all insured benefit plans to purchase specific benefits when purchasing insurance 'relates to' employee benefit plans); *Stuart Circle Hosp. Corp. v. Aetna Health Management,* 995 F.2d 500, 502 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 579, 126 L.Ed.2d 478 (1993) (Virginia's 'any willing provider statute' 'relates to' employee benefit plans); *cf. United Wire,* 995 F.2d at 1193 (holding that a statute regulating only hospital rates did not relate to ERISA plans merely because it had the net result of increasing insurers' and self-funded plans' costs of providing benefits).

Having determined that the Any Willing Provider Statute relates to an ERISA plan for purposes of preemption, the Court must next consider whether the statute is nonetheless saved from preemption as a law regulat-

---

12. "A state ... law may be preempted even though it has no ... direct nexus with ERISA plans if its *effect* is to dictate or restrict the choices of ERISA plans with regards to their benefits, structure, reporting and administra-

tion." *United Wire, Metal and Mach. Health and Welfare Fund v. Morristown Mem. Hosp.,* 995 F.2d 1179, 1193 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993) (emphasis added).

ing insurance. *See* 29 U.S.C. § 1144(b)(2)(A).

### 2. *Savings Clause*

 ERISA's savings clause deals with insurance regulation; it provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). It has the effect of "saving" state laws governing the business of insurance from ERISA preemption. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

The Fifth Circuit applies a multi-factor test to determine whether a state law falls under the savings clause:

> First, the court determine[s] whether the statute in question fit[s] the common sense definition of insurance regulation. Second, it look[s] at [the] three [McCarran–Ferguson] factors: (1) whether the practice (the statute) has the effect of spreading the policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.

*Tingle v. Pacific Mut. Ins. Co.*, 996 F.2d 105, 107 (5th Cir.1993). This Court must first inquire whether the Any Willing Provider Statute meets the common sense definition of insurance regulation.

> A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.

*Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. *See also Hayden v. Blue Cross and Blue Shield of Alabama*, 843 F.Supp. 1427, 1434 (M.D.Ala.1994) (a statute affecting not only the insurance industry, but also other non-insured health care plans and agreements failed the common sense test).

The Court finds that the Any Willing Provider Statute fails the common sense test because it is not specifically directed towards the insurance industry, but, rather, it expressly applies to entities outside the insurance industry, such as employers and Taft–Hartley trusts. *See* La.Rev.Stat.Ann. § 40:2202(3)(a)–(b) (West 1987); *Hayden*, 843 F.Supp. at 1434 ("[a]lthough [the statute at issue there] may have a substantial effect on the insurance industry, the law affects other health care plans and agreements even though they are not a part of an insurance contract"); *cf. Stuart Circle*, 995 F.2d at 504 (holding that Virginia's statute was expressly limited to entities within the insurance industry).

Because Louisiana's Any Willing Provider Statute fails to meet the common-sense definition of insurance and at least one of the three McCarran–Ferguson factors,[13] the Court finds that the statute does not fall within ERISA's savings clause and is thus preempted to the extent that it relates to employee welfare benefit plans governed by ERISA. *See Tingle*, 996 F.2d at 108.

Accordingly, the defendant's motion to dismiss is DENIED in part and GRANTED in part, and plaintiffs' motion for partial summary judgment is GRANTED.

Plaintiffs are granted summary judgment as to Count I of their complaint. Count II of plaintiffs' complaint is DISMISSED. A Judgment and Order of Injunction that comports with this decision shall be submitted by plaintiffs for execution.

---

**13.** It does not satisfy the third factor because, as previously noted, it is not limited to entities with-in the insurance industry.