**TEXAS PHARMACY ASSOCIATION, et al.,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA.**

**No. A 94 CA 391 SS.**

United States District Court, W.D. Texas, Austin Division.

Oct. 24, 1995.

C. Dean Davis, Mark A. Keene, Davis & Davis, P.C., Austin, TX, for Texas Pharmacy Ass'n, Ron's Apothecary, Inc., Lamar Drug, Inc., Prescriptions, Inc., Tri Cities' Pharmacy, Inc., Abeldt's West Loop Pharmacy, City Pharmacy, Hamlin Pharmacy, Anderson Drug, Twelve Oaks Pharmacy, South Houston Pharmacy, Davila Pharmacy, Medical Center Pharmacy, Eilers Discount Pharmacy, Professional Pharmacy, Hart Pharmacy, Hays Hometown Pharmacy, Ward's Pharmacy, Good's Pharmacy, Klein's Discount Phar-

macy, Avondale Pharmacy, Home Care Associates, Inc., Winn's Pharmacy, Tomball Atrium Pharmacy, Rosebud Pharmacy, Maxwell Pharmacy, Save–Mor # 1 Pharmacy, McCrory's Pharmacy, Axtell's Rite Value Pharmacy, Nichols Southside Pharmacy, Nichols Westwood Pharmacy, Pfennig Prescription Pharmacy, Bel–Aire Drugs, S & L Drug Mart, Prescription Lab of Spring Branch, Vista Pharmacy.

Tracy Walters McCormack, Akin, Gump, Strauss, Hauer & Feld L.L.P., Austin, TX, Katherine S. Youngblood, Youngblood & White, Houston, TX, for Prudential Ins. Co. of America.

## MEMORANDUM ORDER

SPARKS, District Judge.

Before the Court is Plaintiffs' request for a declaration of the meaning of the Texas Insurance Code art. 21.52B and that the conduct of Prudential Insurance Company of America (Prudential) is in violation of article 21.52B. Plaintiffs are the Texas Pharmacy Association and numerous individual pharmacies and pharmacists who claim to have been adversely affected by Prudential's failure to abide by the terms of the statute. Prudential contests Plaintiffs' standing to bring this declaratory judgment action, as well as Plaintiffs' interpretation of article 21.52B and the validity of the statute.

The portion of Texas Insurance Code art. 21.52B at issue in this action provides:

Sec. 2. (a) A health insurance policy that is delivered, issued for delivery, or renewed or for which a contract is executed may not:

. . . . .

(2) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy.

Plaintiffs seek a declaration that article. 21.52B is an "any qualified provider" law, requiring Prudential to accept into its pharmacy network any pharmacy or pharmacist who meets its standard terms and requirements, and that Prudential may not deny access to the pharmacy network based on Prudential's desire to limit the number of participating pharmacies in an geographic area.

## A. Standing

As a first line of defense, Prudential challenges the standing of both the Texas Pharmacy Association (TPA) and the individual pharmacies and pharmacists to pursue this action.

### 1. Texas Pharmacy Association

Prudential contends TPA lacks standing due to conflicts of interests among the association members and because "specific factual information regarding each TPA member whose application was rejected is needed to illuminate the basis for Prudential's decision." TPA claims it has standing to prosecute this action on behalf of its members.

In order to have associational standing in this matter, TPA must establish "(1) that its members would have standing to sue in their own right, (2) that the interests [TPA] seeks to protect are germane to its organizational purpose, and (3) that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Assoc. For Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Bd. of Trustees,* 19 F.3d 241, 244 (5th Cir.1994) (following *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). TPA meets all three prongs of this test.

TPA has, by its amended designation of real plaintiffs in interest, demonstrated that its members have standing to sue in their own right. As discussed in more detail below, TPA has identified numerous pharmacies or pharmacists (members of TPA) who claim they have been denied participation in the Prudential pharmacy networks in viola-

**1022**

tion of article 21.52B. By identifying members with standing to sue in their own right, TPA satisfies the first prong of the analysis.

Addressing the second prong, TPA asserts that its mission of serving and protecting pharmacies is germane to the interests it seeks to protect in this litigation. Defendant's response to this prong seems to be that if TPA is successful in this action, it could have a detrimental effect on those TPA pharmacists who are already members of the Prudential network. This alleged conflict of interest does nothing to show that TPA is not furthering its organizational purpose by this action.[1] The interests TPA seeks to protect in this litigation are germane to the organization's purpose of protecting pharmacies. *See, e.g., New York State Club Ass'n v. City of New York,* 487 U.S. 1, 10 n. 4, 108 S.Ct. 2225, 2232 n. 4, 101 L.Ed.2d 1 (1988). TPA seeks enforcement of a state statute apparently designed to protect independent pharmacies' right to participate in health provider plans.

Finally, TPA contends that participation by the specific individual members of the organization is unnecessary because TPA seeks only injunctive relief and Prudential has admitted it rejects qualified pharmacies under certain circumstances.[2] Prudential contends that the participation of individual members is necessary for determining the basis of rejection of specific pharmacies. In light of Prudential's admission that it rejects pharmacies before looking to the pharmacy's ability to meet Prudential's "terms and requirements," TPA meets the final prong of the test to determine associational standing.

The Texas Pharmacy Association meets all three prongs required for associational standing. TPA has standing in its own right to seek declaration of the meaning of article 21.52B.

## 2. Individual Pharmacies and Pharmacists

Prudential also seeks to dismiss the individual pharmacy plaintiffs for lack of standing. Prudential argues that the individual pharmacies and pharmacists have not satisfied the elements for standing stated in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

To have standing, the plaintiffs must establish: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) that the injury is likely to be redressed by the relief sought. *Id.* An "injury in fact" is a concrete and personalized violation of a legally protected interest that is actual or imminent, not conjectural or hypothetical. *Id.* The defendant contends the plaintiffs have failed to meet the first element, injury in fact, or the third element, that the requested declaration would redress the injury.

The individual plaintiffs in this case have met their burden to establish standing. The individual plaintiffs submitted requests to Prudential to participate in their PPO pharmaceutical network. Prudential denied the pharmacies requests without taking an application, stating that it did not need any additional pharmacies in the geographical area the respective plaintiffs served. *See, e.g.,* Exhibits A through BB attached to Plaintiffs' Supplemental Evidence in Support of Summary Judgment.

Prudential argues that the Plaintiffs have not identified particular policies under which they were denied participation in the pharmacy network, and therefore have not proven injury in fact. Despite Prudential's claims to the contrary, many of the requesting pharmacies identified particular policies or plans under which they wished to participate. *Id.* Additionally, Prudential has represented to the Court that it does not have separate pharmacy networks for each policy, but uses one network for all policies in a geographic area. Prudential's refusal to receive an application was not based on the terms of a particular policy, but instead stated that Pru-

---

1. Prudential cites no federal authority for the proposition that potentially conflicting views among association members is a basis for denying associational standing.

2. *See* Affidavit of Vincent Contorno in Support of Prudential's Response to Plaintiff's Motion to Compel Production of Documents, p. 4.

dential had sufficient pharmacies in the geographic area.

Prudential also argues Plaintiffs have not shown an injury in fact because they have not proven they can meet the "terms and requirements" established for all participants in the network. As explained by Prudential: "[T]hey may merely have been spared the futile exercise of filling out a detailed request for proposal which would never result in a contract." Prudential's Sept. 15, 1995 letter brief, p. 3–4. By being denied the opportunity to make full application, allegedly in violation of article 21.52B, plaintiffs have suffered an injury in fact which is both concrete and particularized and not hypothetical or conjectural. As argued by Plaintiffs, article 21.52B was designed to give pharmacies and pharmacists the opportunity to meet the network terms and requirements. When Prudential denied them this opportunity, the individual pharmacies and pharmacists suffered an injury in fact.

Contrary to Prudential's assertions, the declaration requested by the plaintiffs will redress their claimed injury. A declaration by the Court that article 21.52B is an "any qualified provider" law, and that Prudential's conduct is in violation of that law, will allow the plaintiff pharmacies to make full application to the Prudential PPO network and participate in the Prudential network if they meet Prudential's standard terms and requirements. The relief requested will prevent Prudential from relying an interpretation of article 21.52B that allows it to reject pharmacies based on its need for additional pharmacies.[3]

Prudential's challenge to the standing of the very pharmacies it has rejected based on criteria other than contained in article 21.52B is without merit. Samuel Johnson once re-marked that "Patriotism is the last refuge of a scoundrel."[4] In light of Prudential's standing argument, this remark may need to be updated.

## B. Abstention

■ Prudential now argues, perhaps having seen the handwriting on the wall, that this Court should abstain from exercising its jurisdiction under the *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), line of cases.[5] *Burford* abstention is appropriate when the issues to be addressed by the Court would interfere with state administrative processes. *See Baran v. Port of Beaumont Navigation Dist. of Jefferson County, Texas*, 57 F.3d 436, 441–42 (5th Cir.1995).

■ It is undisputed that there is no state administrative process being undertaken by the parties to this suit. Nor has Prudential identified a process available to the Plaintiffs, who are not challenging a ruling by the Texas Department of Insurance. Regardless, even were an administrative proceeding available, "abstention is not mandated merely because an administrative process exists." *Id.* Federal court interpretation of the limited provision of article 21.52B at issue here will not interfere with the state administrative process, thereby mandating *Burford* abstention.

## C. Article 21.52B

■ Turning to the substantive issues, Plaintiffs seek a Court declaration that article 21.52B is an "any qualified provider" statute and that Prudential may not deny access to its PPO network on account of Prudential's desire to restrict the number of participating pharmacies.[6] Prudential is unabashed

---

**3.** Prudential will not be able to inform applying pharmacies/pharmacists: "Our network currently has more than adequate access based on membership in your geographic area and we cannot favorably consider your application at this time." Attachment B to Exhibit K of Plaintiffs' Supplemental Summary Judgment Evidence.

**4.** James Boswell, Life of Dr. Johnson, vol. I at 547 (Everyman ed.).

**5.** It should not be forgotten that Prudential removed this action after Plaintiffs originally filed this declaratory judgment action in state court.

**6.** Prudential has argued that Plaintiffs have no "private right of action" under article 21.52B. However, Plaintiffs seek only a declaration of the meaning of article 21.52B and that Prudential's conduct is in violation of the statute. Plaintiffs do not seek damages against Prudential, and therefore do not need a "private right of action" under article 21.52B.

in stating that its need for additional pharmacies in a particular geographic area is used as a basis for denying pharmacies' participation in their PPO networks. *See, e.g.,* Affidavit of Vincent Contorno, attached as Exhibit A to Prudential's Motion for Summary Judgment. Therefore, the only issue to be decided is whether this conduct is in violation of article 21.52B.

Prudential argues that the "terms and requirements" provision in art. 21.52B, § 2(a)(2), allows it to consider the need for additional pharmacies as part of its selection criteria. Prudential also contends that 28 T.A.C. § 3.3703(2) modifies article 21.52B, expressly allowing Prudential to use "reasonable business judgment," interpreted as economic need, when *determining whether to consider adding pharmacies to the network.*[7]

"Indisputably, the goal of statutory construction is to ascertain legislative intent through the plain language of a statute—without looking to legislative history or other extraneous sources. The Court may not look beyond the words of a statute if those words are rational and unambiguous." *Matter of Stone,* 10 F.3d 285, 289 (5th Cir.1994) (internal citations omitted); *see also, Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994).

The language of article 21.52B is clear. The statute prohibits a pharmacy network operator, such as Prudential, from limiting provider participation in the network by any pharmacy or pharmacist who meets the standard terms and requirements established.

Prudential may not limit access to the network based on its lack of need for additional pharmacies in any particular geographic area.[8] This interpretation of article 21.52B is the only reasonable one, and is supported by the clear intent of the statute, as the provision at issue is within the section titled "prohibited contractual provisions." Prudential's reading of the language would render the provision meaningless, allowing the company to set and apply whatever criteria it chooses, rejecting qualified pharmacies and pharmacists.

The meaning of article 21.52B suggested by Plaintiffs is also supported by the legislative history of the statute. The stated "purpose" of article 21.52B, when enacted, was "To prohibit a contractual provision in an insurance policy which interferes with or limits the participant's ability to choose his own pharmaceutical provider." House Ins. Comm., Bill Analysis, Tex.H.B. 486, 72d Leg., R.S. (1991). The "Section-by-Section analysis" of Section 2(a)(2), at issue in this case, provides that the provision is intended to prohibit contract provisions which "Deny a pharmacy or pharmacist the right to participate in a plan. Provides that the pharmacist or pharmacy must agree to provide services that meet regulations that apply to all pharmacies or pharmacists participating in the plan." *Id.* Legislative intent supports the Court's interpretation of article 21.52B.

■ Prudential provides no support for its construction of article 21.52B. Instead, Pru-

---

7. The relevant portion of 28 T.A.C. § 3.3703 provides:

A health insurance policy that includes different benefits from the basic level of coverage for use of preferred providers shall not be considered unjust under the Insurance Code, Article 3.42, or unfair discrimination under the Insurance Code, Article 21.21 § 4(7)(b), or to violate Article 3.70–2(B), 21.35A, or 21.52 of the Insurance Code if:

. . . . .

(2) the terms and conditions of the contract between the insurer and the preferred provider shall be reasonable, shall not violate any law or any section of this subchapter, shall be based solely on economic, quality, and accessibility considerations, and shall be *applied in* accordance with reasonable business judgment.

8. Prudential was given notice of the statute's meaning by an October 16, 1992 letter from the Ladell Kielmand of the Department of Insurance. The letter states, in part:

That is, you may not refuse to contract with pharmacists under Article 21.52B simply because you currently have a pharmacy within eight miles of 85% of your members. Article 21.52B requires that you contract with any pharmacy which can provide services to your members under your guidelines. Your company is permitted to set quality standards, to require that pharmacies meet your pricing guidelines, and set administrative standards, such as the way in which bills are to be received, etc., but *the company is not permitted to restrict pharmacy services based upon any sort of cap.*

dential argues that it does not need any additional pharmacies, and therefore should not be required to contract with all those interested and qualified. The Texas Legislature has decided otherwise, in the interests of those insured under such policies, by enacting article 21.52B.

Prudential's second argument, that article 21.52B is modified by the Texas Administrative Code (T.A.C.), is similarly without merit. Sections 3.3701 through 3.3705 of the T.A.C. were enacted prior to passage of article 21.52B and do not address pharmacy providers. By their terms, these sections of the T.A.C. do not apply to pharmacies. The section of the T.A.C. relied upon by Prudential refers to "preferred providers." 28 T.A.C. § 3.3703(2). To be considered a "preferred provider" under the regulations, the pharmacies/pharmacists would have to meet the definition of "practitioner." The regulations define "practitioner" as "One who practices medicine or a healing art *and is specified in the Insurance Code, Article 3.70–2(b), 21.35A, or 21.52.*" 28 T.A.C. § 3.702 (emphasis added). By definition, the regulations do not apply to pharmacies or to article 21.52B.

Alternatively, the regulations, even if they applied to pharmacies and allowed consideration of need, would be directly contrary to the "any qualified provider" provisions of article 21.52B, and therefore would be invalid. *See Havner v. Meno,* 867 S.W.2d 130, 134 (Tex.App.—Austin 1993, no writ) ("It is well settled that an agency cannot adopt rules that are inconsistent with a statute."). Finding that the regulations do not apply to article 21.52B, the Court need not reach the issue of the validity of the regulations.

## D. ERISA

■ Finally, Prudential argues that article 21.52B is preempted by ERISA because it "relates to the business of insurance" and is not within the "savings" clause, 29 U.S.C.

§ 1144(b)(2)(B). The issue of ERISA preemption of an "any willing provider" statute has previously been addressed by the Fourth Circuit in *Stuart Circle Hosp. Corp. v. Aetna Health Management,* 995 F.2d 500 (4th Cir.), *cert. denied,* 114 S.Ct. 579, 126 L.Ed.2d 478 (1993). The Court finds the Fourth Circuit's reasoning applicable to the article 21.52B.

Despite Plaintiffs' contention to the contrary, article 21.52B "relates to" employee benefit plans. 29 U.S.C. § 1144(a). Although disclaiming any effect on self-insured ERISA plans, the statute impacts insured ERISA plan.[9] The question is whether the statute is within the insurance savings clause, thereby saving it from ERISA preemption. To evaluate a statute's coverage by the insurance savings clause, the court must take the two-prong approach set out by the United States Supreme Court in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 742, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985).

The first prong of the test requires the Court to determine whether the statute in question fits the common sense definition of insurance regulation. *Id.* The Texas statute is clearly designed to regulate insurance contracts, by requiring policies to allow any willing and qualified pharmaceutical provider to participate in a PPO network that services the policy. The statute is not so broad as to extend beyond the regulation of insurance contracts, that is it is not directed beyond the insurance industry because self-insured plans are specifically excluded from the statute. Tex.Ins.Code Ann. art. 21.52B, § 5. Article 21.52B meets the common sense definition of insurance regulation and satisfies the first prong of the analysis.[10]

The second prong requires the Court to look at three factors: "(1) Whether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured;

9. The "Fiscal Note" Plaintiffs rely on to suggest that article 21.52B does not apply to any ERISA plans cannot override the clear language of the statute.

10. This case is distinguishable from *Cigna Healthplan of Louisiana, Inc. v. State, ex. rel.*

*Ieyoub,* 883 F.Supp. 94 (M.D.La.1995) (appeal pending). The any willing provider statute addressed by the court in *Cigna* was not limited to the insurance industry, but applied to employers and Taft–Hartley trusts. The court found the statute failed the first prong of the analysis. *Id.* at 104.

and (3) whether the practice is limited to entities within the insurance industry." *Tingle v. Pacific Mut. Ins. Co.*, 996 F.2d 105, 107 (5th Cir.1995) (citing *Metropolitan Life*, 471 U.S. at 742, 105 S.Ct. at 2391). The statute meets the first factor by spreading the policyholders' cost risk. As explained by the court in *Stuart Circle*, by prohibiting unreasonable restrictions of pharmaceutical providers, the statute spreads the "cost component of the policyholders' risk among all the insureds, instead of requiring the policyholder to shoulder all or part of this cost when seeking" pharmaceutical products from an excluded pharmacy of his or her choice. *Stuart Circle*, 995 F.2d at 503.

Likewise, the statute is an integral part of the policy relationship between the insurer and the insured. Article 21.52B ensures that policyholders have the option of visiting a qualified pharmacy of his or her choice without paying an increased cost for that option. The Texas Legislature apparently recognized that not all pharmacies provide the same level of service and support to their customers.[11] The statute, by allowing insured's access to the qualified pharmacy of their choice, affects both the quality and the cost components of the relationship between the insured and the insurer. *Id.*

Finally, article 21.52B satisfies the third factor of the second prong by limiting its effect to entities within the insurance industry. To paraphrase the United States Supreme Court's analysis of this factor in *Metropolitan Life*, Texas' any qualified provider statute imposes requirements only on the insurers, such as Prudential, with the intent of affecting the relationship between the insured and the insurer. 471 U.S. at 742, 105 S.Ct. at 2391. As such, the statute limits its effects to entities within the insurance industry.

Having satisfied both prongs of the analysis, article 21.52B falls within the insurance savings clause, 29 U.S.C. § 1144(b)(2)(A), and is not preempted by ERISA. This Court's decision in this case follows, and is consistent with, that of the Fourth Circuit in *Stuart Circle*, 995 F.2d 500.

### E.   Conclusion

The Court finds that Plaintiffs have standing to seek a declaratory judgment regarding Texas Insurance Code art. 21.52B as an "any qualified provider" statute and its prohibition against denying qualified pharmacies the opportunity to participate in a PPO network. The provision at issue is clear and unambiguous in providing that an insurer, such as Prudential, must allow participation in its PPO pharmacy network by any pharmacy or pharmacist who meets the standard terms and conditions required of all participating pharmacies. The insurer may not deny participation in the network based on the insurer's lack of need for additional pharmacies in a particular geographic area, as Prudential admits it has been doing. Finally, the Court finds that article 21.52B falls within the "savings clause" of ERISA, and therefore is not preempted by the federal legislation.

Judgment will be entered consistent with this order.

Accordingly, the Court enters the following orders:

IT IS ORDERED that Defendant Prudential's Motion to Dismiss Pursuant to Rule 12(b)(1) [# 30], Motion to Dismiss [# 39], Motion for Summary Judgment [# 44], Motion to Strike TPA's Designation of Real Parties in Interest [# 54], and Supplemental Motion to Strike [# 69] are each DENIED; and

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment [# 43] is GRANTED.

---

**11.** *See* House Ins.Comm., Bill Analysis, Tex.H.B. 486, 72d Leg., R.S. (1991) (purpose of article

21.52B is to prevent limitation of insured's ability to choose own pharmaceutical·provider).